IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| SAINTS & SINNERS BREWING COMPANY, LLC D/B/A BACK PEW BREWING COMPANY<br><br>*Plaintiff*,<br><br>v.<br><br>JESTER KING CRAFT BREWERY, LLC<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 1:25-cv-1620-RP |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Saints & Sinners Brewing Company, LLC D/B/A Back Pew Brewing Company ("Back Pew") files this Motion for Preliminary Injunction under Federal Rule of Civil Procedure 65 and respectfully shows the Court as follows:

**INTRODUCTION**

This case presents a textbook example of junior-user trademark infringement. For nearly a decade, Back Pew has built substantial consumer goodwill in its SATYR'S SWILL mark for German bock-style beer. In 2025—ten years after Back Pew's first use—Defendant Jester King Craft Brewery, LLC ("Jester King") launched "THE SATYR" for a conspicuously similar German-style beer, using the identical dominant term "SATYR." When Back Pew notified Jester King of its prior rights, Jester King did not rebrand; instead, it announced plans for broader distribution and filed its own federal trademark application the very same day. This is not a close case. The marks share the same dominant element; the products are virtually identical; the parties

compete in the same Texas craft-beer market through the same retail and advertising channels; consumers have already been confused; and Jester King proceeded with full knowledge of Back Pew's prior rights in the mark. The Lanham Act exists precisely to remedy this situation. Because Back Pew satisfies all four requirements for preliminary injunctive relief, this Court should enjoin Jester King from using "THE SATYR" while this action proceeds.

The Lanham Act exists, in part, to provide injunctive relief where the continued use of a confusingly similar mark on nearly identical goods is causing ongoing marketplace confusion, thereby threatening goodwill and brand identity. As described, monetary damages cannot fully remedy the loss of control over business, consumer confusion, reputational damage, and the dilution of Back Pew's mark distinctiveness. This Court, therefore, should enter a preliminary injunction ordering Jester King to immediately cease use of THE SATYR in connection with beer distribution and related marketing while this case proceeds in litigation.

## FACTS

As described in Back Pew's Original Complaint [ECF 1], the matter before this Court centers on classic Lanham Act provisions intended to prevent brand confusion, trademark dilution, consumer confusion, and the corresponding irreparable harm that Back Pew will suffer without a preliminary injunction. Back Pew has used the mark SATYR'S SWILL since 2015 for its flagship German bock-style beer, with the first commercial release in January of 2016. [ECF 1, ¶ 6]. As part of the release and Back Pew's ongoing business development, Back Pew has invested substantial time and resources building goodwill in the SATYR'S SWILL brand, which has continued to gain traction in the beer community through nearly a decade of consumer recognition. [ECF 1 at ¶ 7; Decl. of Bobby Harl, ¶ 2-5]. The SATYR'S SWILL brand has even extended into other products in the "SATYR" line, such as "SON OF SATYR," reflecting Back Pew's deliberate

cultivation of a SATYR-branded product family and ecosystem—the "SON OF SATYR" launch date was September 2024 and has generated $70,020.95 in revenue through the sale of 1361 cases, 98 one-half barrel kegs, and 260 one-sixth barrel kegs. [Harl Decl., ¶ 6]. Given SATYR's success, Back Pew sought federal protection with the United States Patent and Trademark Office for SATYR'S SWILL, Serial No. (No. 99345024). [ECF 1, Exhibit A].

In contrast, Jester King began marketing "THE SATYR" in 2025, nearly 10 years after Back Pew's introduction of SATYR'S SWILL, a conspicuously similar German-style beer. Due to likelihood of confusion, on June 23, 2025, Back Pew provided notice and attempted to informally resolve the issue with Jester King. [ECF 1, Exhibit B]. In response, Jester King stated that THE SATYR would be a new core product for distribution in Texas and elsewhere, ignored Back Pew's subsequent attempts to confer, and then, later that same day, filed its own federal application for THE SATYR (No. 99248554). [ECF 1, Exhibit E]. Back Pew's attempts to resolve the dispute amicably were ignored, forcing it to file the instant suit. [ECF 1, Exhibits F-K].

## ARGUMENTS AND AUTHORITIES

Back Pew continues to suffer irreparable harm because of Jester King's indefensible launch of THE SATYR. Back Pew provided Jester King more than enough opportunity to rebrand its nearly identical product and was repeatedly ignored. [ECF 1, Ex. B-F]. To stop the irreparable harm and to protect consumers from further confusion, Back Pew seeks a preliminary injunction ordering Jester King to immediately cease all use of the infringing marks. *See* Fed. R. Civ. P. 65(a). The Lanham Act explicitly authorizes injunction relief. *See* 15 U.S.C. § 1116.

As alleged here and in Back Pew's Original Complaint [ECF 1], Back Pew meets all four requirements for this relief: (1) Back Pew is substantially likely to succeed on the merits; (2) it will suffer irreparable harm without injunctive relief; (3) the balance of equities calls for issuing

an injunction; and (4) an injunction strongly favors the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 US 7, 20 (2008); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (per curiam).

**I.    Back Pew is substantially likely to succeed on the merits.**

**A. Back Pew possesses legally protectable rights in SATYR'S SWILL.**

Back Pew is substantially likely to succeed on the merits. To show trademark infringement and unfair competition, a plaintiff must establish: (1) the ownership of a legally protectable mark, and (2) a likelihood of consumer confusion. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193-94 (5th Cir. 1998). The same test applies to claims under the Lanham Act and under common law. *See, e.g., Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010); *Capece*, 141 F.3d at 193 ("A determination of a likelihood of confusion under federal law is the same as the determination of a likelihood of confusion under Texas law for a trademark infringement claim.").

Back Pew has enforceable rights in SATYR'S SWILL through long-standing and continuous use. Back Pew has used SATYR'S SWILL as the brand name for its flagship German bock-style beer since 2015, with a first commercial release in January 2016. [ECF 1, Ex. B; Harl Decl., ¶ 2]. Back Pew's prior use, which significantly predates Jester King's 2025 infringement, gives Back Pew protectable and senior trademark rights. *See Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990) (explaining that priority of use determines ownership and the right to enjoin a "junior" user).

Back Pew has also sought federal registration for SATYR'S SWILL (No. 99345024), which remains pending. [ECF 1, Exhibit A; Harl Decl., ¶ 7]. While a pending application does not

itself confer the statutory presumptions of validity and exclusive nationwide rights that attach upon federal registration, Back Pew's longstanding use and resulting consumer recognition establish enforceable trademark rights under common law, and the pending application further reflects Back Pew's good-faith claim of ownership and priority in the SATYR'S SWILL mark. *See Alamo Area Mut. Hous. Ass'n, Inc. v. Lazenby*, No. 5:17-CV-634-DAE, 2017 WL 7052253, at *7 (W.D. Tex. July 28, 2017) (Plaintiff provided evidence of actual and continuing use of the "Lil' Texas Livin'" mark in commerce dating back to March 2015). Additionally, Back Pew's application was filed under Section 1(a) of the Lanham Act, based on use in commerce, with evidence that the mark has been used on beer at least as early as May 1, 2016. [ECF 1, Ex. A]. Section 1(a)'s use-based filing, combined with Back Pew's continuous use and substantial investment, establishes that Back Pew has enforceable common-law trademark rights in SATYR'S SWILL.

### B. Jester King's use of THE SATYR is likely to confuse consumers.

The Fifth Circuit uses eight nonexhaustive factors to evaluate the likelihood of confusion (often called the "digits of confusion"): (1) the type of mark allegedly infringed; (2) similarity of the marks; (3) similarity of the products or services; (4) identity of retail outlets and purchasers; (5) identity of advertising media used; (6) defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by purchasers. *Smack Apparel Co.*, 550 F.3d at 478. No single digit is dispositive, and the analysis emphasizes the marks as encountered in the marketplace. *Id.*; *see Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 80 F.4th 607, 620 (5th Cir. 2023).

#### 1. Type of Mark (Factor One).

Courts in the Fifth Circuit look at two aspects to determine a mark's strength. *Future Proof Brands, LLC v. Molson Coors Bev. Co.*, 982 F.3d 280, 290 (5th Cir. 2020). The analysis centers on a spectrum of distinctiveness with five categories, from weakest to strongest: (1) generic,

(2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Id.* Courts categorize marks by "their relationship to the products they represent," and arbitrary marks "bear no relationship to the products or services to which they are applied." *Id*. at 291.

SATYR'S SWILL is an arbitrary mark for beer, strengthened further by nearly a decade of continuous use, marketing investment, and consumer recognition. [ECF 1; Harl Decl., ¶ 2-5]. An ordinary consumer encountering the mark for the first time would not inherently know from the mark alone what Back Pew offers as a company. *See Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, 397 F. Supp. 3d 847, 861 (N.D. Tex. 2019) (finding that the mark FIREBIRDS was "at least[] suggestive . . . and may even be arbitrary because it [wa]s unclear if an ordinary consumer could even imagine what type of services Plaintiff provides from the word 'Firebirds'"). Although "SWILL" is a slang term for liquids and alcoholic drinks, it has been expressly disclaimed and does not directly relate to beer, leaving "SATYR" as the dominant and source-identifying element. *See id*. A satyr is a creature from Greek mythology; it has no inherent connection to beer, brewing, or beverages of any kind, making 'SATYR' a classic arbitrary mark entitled to broad protection. SATYR'S SWILL is thus inherently strong and "entitled to the broadest protection against infringement." *Oleg Cassini, Inc. v. Cassini Tailors, Inc.*, 764 F. Supp. 1104, 1109 (W.D. Tex. 1990).

Moreover, Back Pew's SATYR'S SWILL mark carries significant marketplace strength from years of continuous use, commercial success, and advertising efforts. *See Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC.*, 83 F. Supp. 2d 810, 819 (S.D. Tex. 1999) ("Marks may be strengthened . . . by extensive advertising, length of time in business, public recognition, and uniqueness."). Back Pew has invested heavily in developing consumer recognition of SATYR'S SWILL, resulting in 4835 customer ratings on Untappd, thousands of social media followers, and

significant marketing investment. [Harl Decl., ¶ 3-5].

### 2. *Similarity of the Marks, Products, and Services (Factors Two and Three).*

Back Pew's mark is SATYR'S SWILL. Jester King's mark is THE SATYR. Both share the identical dominant term "SATYR." Minor additions like "THE" or "SWILL" do not meaningfully change the commercial impression, especially where the shared dominant element is arbitrary and distinctive. *See Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 F. App'x 630, 635 (5th Cir. 2008) (per curiam) ("The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated."). Here, consumers are likely to perceive THE SATYR as a shortened version or extension of SATYR'S SWILL. [ECF 1, Ex. B; Harl Decl., ¶ 8].

The products are also identical in key respects: both Back Pew and Jester King sell beer, and Jester King's THE SATYR is a German-style beer like Back Pew's SATYR'S SWILL. Courts in the Fifth Circuit assess whether the products and/or services are "similar enough to cause confusion as to source of affiliation," or whether the defendant's business is one into which the plaintiff would "naturally be perceived to expand." *Capece*, 141 F.3d at 202. When goods are identical, less similarity between marks is needed to support consumer confusion. " *See Am. Century Cas. Co.*, 295 Fed. Appx. At 636.

### 3. *Identity of Retail Outlets and Purchaser and Advertising Channels (Factors Four and Five).*

Both Back Pew and Jester King also offer similar services. They sell craft-beer to consumers in Texas and through the same types of outlets, such as taprooms, restaurants, and grocery and liquor stores. *See Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 490 (5th Cir. 1992) (explaining that these factors focus on the "aspects in which the businesses overlap"). Both

7

products are currently on the shelves at Spec's, a well known alcoholic beverage retailer in Texas.

Moreover, they advertise and market their products through these same channels and also through tastings, festivals, events, and digital platforms like brewery websites and Untappd.com, which appeal to overlapping audiences. *See Interactive Life Forms, LLC v. Weng*, No. A-12-CA-1182-SS, 2013 WL 12116329, at *2 (W.D. Tex. Jan. 15, 2013) (finding a likelihood of success on the merits of trademark infringement claim where products at issue "sold in same type of stores, advertised in similar ways, and marketed and sold to the same types of consumers"). Indeed, both parties also sell to the same end-users and so the likelihood of confusion increases. *See, e.g., Gruma Corp. v. Mexican Restaurants, Inc.*, 497 F. App'x 392, 396 (5th Cir. 2012) ("The likelihood of confusion increases when two users of the mark compete directly for end-users in the same market.").

### 4. Jester King's Bad Faith (Factor Six).

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to stablish trademark infringement." *Oreck Corp. v. U.S. Floor Sys. Inc.*, 803 F.2d 166, 173 (5th Cir. 1986). At the same time, however, "[a] showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intended to cause public confusion." *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151 n.2 (5th Cir. 1985).

Here, Back Pew notified Jester King of Back Pew's prior rights on June 23, 2025. [ECF 1. Ex. B.] Jester King acknowledged receipt, and, in the face of actual knowledge of Back Pew's rights, expressed an intention to broadly distribute THE SATYR and subsequently filed its own federal application later that same day. [ECF 1, Ex. C–E]. Jester King's decision to file a federal trademark application within hours of receiving notice of Back Pew's prior rights—rather than

conducting due diligence before adopting the mark—reflects a deliberate attempt to create a paper trail to obstruct Back Pew's enforcement efforts.

Jester King also ignored Back Pew's repeated good faith attempts to confer and, instead, threatened retaliatory enforcement tactics if Back Pew insisted on protecting its existing trademark rights. [ECF 1, Ex. F–N]. Jester King's conduct supports bad faith and intent to use an infringing mark with knowledge of the predecessor mark. *See Conan Props., Inc.*, 752 F.2d at 151 n.2.

### 5. *Evidence of Actual Confusion (Factor Seven).*

Evidence of actual confusion is "the best evidence of a likelihood of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009). However, "[e]vidence of actual confusion is not necessary to a finding of a likelihood of confusion." *Capece*, 141 F.3d at 203. "Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971). Even a single instance of actual confusion supports finding a likelihood of confusion. *See Xtreme Lashes*, 576 F.3d at 230–31; *see also Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975) (reversing the district court's finding of no likelihood of confusion and holding that four instances of actual confusion was "precisely the type of error that 15 U.S.C. § 1114 seeks to protect against"). That said, when marks are identical or nearly identical, courts have granted preliminary injunctions with minimal analysis of actual confusion. *See Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F.Supp.3d 624 (2022).

Back Pew initially reached out to Jester King on June 23, 2025, because a Back Pew sales representative had mistakenly thought that Jester King's launch of "THE SATYR" was related to Back Pew's prior mark "SATYR'S SWILL." [ECF 1, Ex. A; Harl Decl., ¶ 8]. Notably, this actual

9

confusion occurred almost immediately upon Jester King's launch—before THE SATYR achieved any significant market penetration. Understandably, Back Pew was worried that the release would cause significant consumer confusion, if a sales representative was already confused at this nascent stage of Jester King's use. [Harl Decl., ¶ 8] The potential for widespread actual confusion should Jester King be allowed to continue marketing and broadly distributing "THE SATYR" is extremely high, and a preliminary injunction is necessary to prevent significant actual confusion from occurring during this pending litigation.

### 6. Degree of Care Exercised by Purchasers (Factor Eight).

Low prices typically lead to less careful consumers and thus a greater risk of confusion. *See Smack Apparel*, 550 F.3d at 474. Beer is a relatively inexpensive consumer product. Purchasers often make quick or casual decisions in selecting brands. Because craft beers are frequently purchased in bars, taprooms, or retail stores without extended deliberation, the average buyer is unlikely to exercise a high degree of care in distinguishing between SATYR'S SWILL and THE SATYR. The low price point and impulse nature of these purchases make confusion more likely.

On balance, the digits of confusion confirm that Back Pew is substantially likely to succeed on its Lanham Act trademark infringement and false designation claims.

## II. Back Pew will suffer irreparable harm without injunctive relief.

Back Pew will suffer irreparable harm absent injunctive relief. Congress amended the Lanham Act to provide a rebuttable presumption of irreparable harm upon a showing of likelihood of success on the merits for violations under 15 U.S.C. §§ 1114 and 1125(a). 15 U.S.C. § 1116(a). The Fifth Circuit recognizes this presumption in trademark preliminary injunction cases. *See Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 546 (5th Cir. 2023); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to

establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed."). Because Back Pew is likely to succeed on the merits, this presumption of irreparable harm applies.

Even apart from the statutory presumption, Back Pew faces significant irreparable injuries: loss of control over its reputation, erosion of goodwill, and the dilution of the distinctiveness of the "SATYR'S SWILL" and corresponding "SON OF SATYR" brands. These harms are difficult to quantify and cannot be fully remedied by monetary damages. Measuring lost sales, diverted customers, and reputational harm from ongoing confusion is inherently speculative, making injunctive relief the only adequate remedy. As long as Jester King continues selling and promoting THE SATYR—especially as a core product for broad distribution—consumers are highly likely to confuse Back Pew and Jester King. [ECF 1].

Moreover, each day that Jester King continues using THE SATYR mark, additional consumers are exposed to the infringing mark, compounding the confusion and dilution. The ongoing nature of this harm makes it inherently irreparable—Back Pew cannot "unconfuse" consumers who have already been misled, nor can it fully quantify the lost sales, diverted customers, and reputational damage resulting from Jester King's infringement. Money damages are therefore inadequate, and only injunctive relief can preserve Back Pew's rights while this litigation proceeds

### III.  The balance of equities favors an injunction.

The harm from Jester King's infringement far outweighs any inconvenience of an injunction. Back Pew faces ongoing harm to its goodwill and marketplace identity each day the infringing mark remains in use. By contrast, any harm to Jester King from an injunction is the result of its own decision to adopt "THE SATYR" mark after notice of Back Pew's "SATYR'S

SWILL" rights and ongoing use. *See JUUL Labs, Inc. v. Gladys Smoke Shop, Inc.*, No. 1:20-cv-353, 2021 WL 7184950, at *8 (E.D. Tex. Sept. 7, 2021) ("The balance of the equities in denying this injunction would greatly harm [plaintiff], who has expended extensive time and energy into developing its brand. Additionally, denying the injunction would deny [plaintiff] exclusive use of its trademark."). Simply put, an injunction will serve the "overriding goal" to "wind the clock back" to "the last date before the junior user began using the mark." *See Savage Tavern, Inc.,* 589 F. Supp. 3d at 662.

**IV.     An injunction serves the public interest.**

Finally, the public interest strongly favors preventing consumer confusion and ensuring accurate product and source identification in the marketplace. *See Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984). As this Court has explained, "the public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Lazenby*, 2017 WL 7052253, at *10 (quoting *Quantum Fitness Corp.*, 83 F. Supp. 2d at 832). Trademark law protects consumers from deception and protects businesses from misappropriation of goodwill. Enjoining the use of a confusingly similar mark on identical goods serves those interests.

### CONCLUSION

Back Pew meets all the requirements for a preliminary injunction. The Court should order Jester King to immediately cease all use of "THE SATYR" mark, and any other confusingly similar marks, until a final judgment is entered.

DATED: March 2, 2026                                    Respectfully submitted,

COKINOS | YOUNG

By: /s/ Lauren S. Aldredge
    LAUREN S. ALDREDGE
    State Bar No. 24079380
    CHRISTOPHER L. ROSS
    State Bar No. 24104680
    laldredge@cokinoslaw.com
    cross@cokinoslaw.com
    Las Cimas IV
    900 Capital of Texas Hwy, Suite 425
    Austin, Texas 78746
    Tel: (512) 476-1080

    MITCHELL R. POWELL
    State Bar No. 24091890
    mpowell@cokinoslaw.com
    Four Houston Center
    1221 Lamar, 16th Floor
    Houston, Texas 77010

**ATTORNEYS FOR PLAINTIFF SAINTS & SINNERS BREWING COMPANY, LLC D/B/A BACK PEW BREWING COMPANY**

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel have conferred about this motion by email on February 27, 2026 and March 2, 2026. Defendant's counsel did not specify one way or the other, so Plaintiff presumes that Defendant opposes entry of a preliminary injunction.

  /s/ Lauren S. Aldredge
Lauren S. Aldredge
March 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of March, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification to the CM/ECF participants, including Defendant Jester King Craft Brewery, LLC.

  /s/ Lauren S. Aldredge
Lauren S. Aldredge
March 2, 2026